## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 11-C-1331 |
| BRANDONISIO CONSTRUCTION CORPORATION, an Illinois corporation f/k/a BRANDONISIO CONSTRUCTION COMPANY, and VITO BRANDONISIO, individually, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively "Funds") and James S. Jorgensen (hereinafter "Jorgensen"), Administrator of the Funds, by their attorneys Patrick T. Wallace, Jerrod Olszewski, Christina Krivanek, Amy N. Carollo, and John Hamada, and for their Complaint against Defendants Brandonisio Construction Corporation, f/k/a Brandonisio Construction Company, and Vito Brandonisio, state:

### COUNT I

### (Default On Note)

1.     Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), and 28 U.S.C. §1331.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4.      Plaintiff James S. Jorgensen ("Jorgensen") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Brandonisio Construction Corporation, f/k/a Brandonisio Construction Company, (hereinafter "Brandonisio Construction" or the "Company") is an Illinois corporation. At all times relevant the Company did business within this District and was an employer within

2

the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.     Defendant Vito Brandonisio ("Brandonisio") is and was at all times and officer and shareholder of the Company.

7.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company have been parties to the most recent of which became effective June 1, 2010 ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit A).

8.     On or about January 17, 2007, the Company entered into Participation Agreements for Non-Bargaining Employees with the Pension and Welfare Funds obligating the Company to submit contributions on behalf of Independent Self Contributor ("ISC") Vito Brandonisio in accordance with the terms of those Agreements and the Funds respective Agreements and Declarations of Trust.  Copies of those Agreements are attached hereto as Exhibits B and C.

9.     The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the

3

CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the CARCO Industry Advancement Fund ("CARCO"), and the Illinois Small Pavers' Association ("ISPA") to act as an agent in the collection of contributions due to those Funds.

10.     The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the Training Fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee.

11.     The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

12.     The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

13.     On or about August 3, 2010, the Company entered into an Installment Note ("Note") to pay certain amounts due to the Funds for the revised audit for the period of March 1, 2008 through December 31, 2009. A true and accurate copy of the Note is attached hereto as Exhibit D. Simultaneously with the execution of the Note, Defendant Brandonisio signed a Guaranty of Payment and Indemnification Agreement ("Guaranty") agreeing to personally guaranty the amounts due on the Note. A true and accurate copy of the Guaranty is attached hereto as Exhibit E. Paragraph 1 of the Guaranty provides in relevant part:

4

The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

14.     The Note is in default. Specifically, the Company has failed to make timely payments due on the Note for the January and February 2011 installments. Further, the Company has failed to submit and pay current benefit and dues reports and contributions for the period of October and November 2010 and ISC reports for the period of October 2010 forward. Accordingly, Defendants owe the accelerated amounts due under the Note including all interest and liquidated damages accrued.

15.     The Company's failure to submit payment of benefit contributions violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

16.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, and the terms of the Agreement, the Funds' respective Trust Agreements, the Note, and the Guaranty, the Defendants are liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants Brandonisio Construction Corporation, f/k/a Brandonisio Construction Company, and Vito Brandonisio:

5

a.    entering judgment in sum certain in Plaintiffs' favor and against Defendants for the amounts due on the defaulted Note including unpaid contributions, interest, liquidated damages, and Plaintiffs' attorneys' fees and costs; and

b.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Submit Benefit Contributions)

17.    Plaintiffs reallege paragraphs 1 through 16 of Count I.

18.    Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a)    failed to report and/or pay all contributions owed to Plaintiff Laborers' Pension Fund from October 2010 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries:

(b)    failed to report and/or pay all contributions owed to Plaintiff Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity from October 2010 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)    failed to report and/or pay all contributions owed to Laborers' Training Fund from October 2010 forward, thereby depriving the Laborers' Training Fund of contributions, income

and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(d)     failed to report and/or pay all contributions owed to one or more of the other affiliated funds identified above from October 2010 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries.

19.     The Company's failure to submit payment of benefit contributions violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C. §185.

20.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, and the terms of the Agreement, the Funds' respective Trust Agreements, and the Guaranty, the Defendants are liable to the Funds for unpaid contributions, as well as interest and 20% liquidated damages on the unpaid contributions required under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, accumulated liquidated damages and interest on late reports,  reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants Brandonisio Construction Corporation, f/k/a Brandonisio Construction Company, and Vito Brandonisio:

a.     ordering the Company to submit current benefit reports and contributions for its employees and ISC Vito Brandonisio for the period of October 2010 forward and ordering the Company to submit its books and records to and audit upon demand for the period of January 1, 2010 forward;

7

b.     entering judgment in sum certain in Plaintiffs' favor and against Defendants on the amounts shown due and owing pursuant to the audit including unpaid contributions, interest, liquidated damages, accumulated liquidated damages and interest on late reports, and Plaintiffs' attorneys' fees and costs; and

c.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Failure To Submit Dues)

21.     Plaintiffs reallege paragraphs 1 through 16 of Count I.

22.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

23.     Notwithstanding the obligations imposed by the Agreement, the Company has failed to submit and dues that were or should have been withheld from the wages of its employees performing covered work for reports for the period of October 2010 forward, thereby depriving the Union of income and information necessary to determine dues submission compliance.

24.     Pursuant to the Agreement, and the Guaranty, Defendants are liable to the Funds for the unpaid union dues, liquidated damages, and reasonable attorneys' fees and costs as the Union's collection agent and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants Brandonisio Construction Corporation, f/k/a Brandonisio Construction Company, and Vito Brandonisio for the Union dues and liquidated damages owed for the Company's employees and ISC Vito Brandonisio, accumulated liquidated damages owed on late reports and the audit, together with all attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

February 25, 2010

Laborers' Pension Fund, et al.

By:  /s/ Patrick T. Wallace

Patrick T. Wallace
Jerrod Olszewski
Christina Krivanek
Amy N. Carollo
John Hamada
Laborers' Pension and Welfare Funds
Sub Office, 111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540



HEADQUARTERS OF

# Construction & General Laborers'
# District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A. F. of L. - C. I. O.

6121 WEST DIVERSEY AVENUE • CHICAGO, ILLINOIS 60639 • TELEPHONE: 237-7537

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1002, 1006, 1035, 1092, 1094

| Joseph A. Lombardo, Jr | MEMORANDUM OF JOINT WORKING AGREEMENT | Ernest Kumerow |
|---|---|---|
| Secretary-Treasurer | | President |
| | | Business Manager |

Brandonisio Construction Corp.

It is hereby stipulated and agreed by and between _____, hereinafter called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1002, 1006, 1035, 1092 and 1094 and other and emerging and encompassing the geographic areas of the Counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. Employer, in response to the Union's claim that it represents an uncoerced majority of each Employer's laborer employees, acknowledges and agrees that there is no good faith doubt that the Union has been authorized to and in fact does represent such majority of laborer employees. Therefore, the Union is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board Certified Election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, Chicagoland Association of Wall and Ceiling Contractors, Chicago Building Wreckers Association, Lumber Trade Association, Lake County Contractors Association, Lake County Paving Contractors Association and Sewer Contractor Association, Association of Wall and Ceiling Contractors of Lake County, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1976, together with all amendment thereto. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the agreement of the local UNION is herein specifically incorporated in this agreement and shall supersede the standard District Council agreement. In the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Memorandum of Agreement.

3. The EMPLOYER agrees to pay the amounts which (he) (it) is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS' PENSION FUND, and to become bound by and be considered a party to the Agreements and the Declaration of Trust creating said Trust Funds as if (he) (it) had signed the original copies of the Trust instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustee designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare and Pension Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions the EMPLOYER evidenced its intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Memorandum of Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER's violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management, or operation of the EMPLOYER's business, whether by sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. The Employer shall give notice of the existence of this agreement to any purchaser, transferee, lessee, assignee, etc. of the operation covered by this agreement or any part thereof. Such notice shall be in writing with a copy to the Union at the time the seller, transferor or lessor executes a contract or transaction as herein described. In the event the EMPLOYER fails to require the purchaser, transferee, or lessee to assume the obligations of this Agreement, the EMPLOYER (transferor, seller, assignor) shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure to require compliance, but shall not be liable after the purchaser, the transferee or lessee has agreed to assume the obligations of this Agreement. The term EMPLOYER, as used herein, shall be deemed to refer to and bind successors, assigns, purchasers, lessees or transferees of the EMPLOYER, whether such succession, assignment or transfer be effected voluntarily or by the operation of law, individually or collectively, where feasible. In the event an entire operation or any part thereof is sold, leased, transferred, or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceeding, such operation or use shall continue to be subject to the terms and conditions of this Agreement for the life thereof. It is understood by this section that a bona fide sale, transfer or change of business operation shall not be used to avoid application of this Agreement or any of the rights, provisions, terms or conditions thereof. Transactions undertaken in order to evade or avoid the application of this agreement, including but not limited to the sale or transfer of the EMPLOYER's business or assets or any part thereof to another entity controlled by the EMPLOYER or which controls the EMPLOYER or under common control with the EMPLOYER, shall not relieve the EMPLOYER of its obligations hereunder and shall constitute a change or transfer of change it shall be a condition of such agreement affecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise.

6. The negotiated wage and fringe benefit contribution rates in the various collective bargaining agreements are as follows:

| June 1, 1988 | $16.05 per hour | Wages |
|---|---|---|
| | 1.37 per hour | Health & Welfare Fund |
| To | 1.30 per hour | Pension Fund |
| | .10 per hour | Training Fund |
| | .02 per hour | M.C.I.A.F. |
| May 31, 1989 | Dues Deductions are $0.20 per hour for each hour worked. | |
| June 1, 1989 | A Seventy five Cent (.75¢) per hour increase to be allocated between wages and benefits. | |
| | One Cent (.01¢) per hour Chicagoland Construction Safety Council. | |
| To | Welfare and Pension remain as above unless additions are allocated. | |
| | Training remain as above unless additions are allocated. | |
| | M.C.I.A.F. remain as above. | |
| May 31, 1990 | Dues deductions are $0.20 per hour unless notified of an increase. | |
| June 1, 1990 | A Seventy Five Cent (.75¢) per hour increase to be allocated between wages and benefits. | |
| | Welfare and Pension remain as above unless additions are allocated. | |
| To | Training remain as above unless additions are allocated. | |
| | M.C.I.A.F. and Chicagoland Construction Safety Council remain as above. | |
| May 31, 1991 | Dues deductions are $0.20 per hour unless notified of an increase. | |

All additional wage rate, dues checkoff, or fringe benefit increases as negotiated after May 31, 1991 shall be incorporated in this Memorandum of Agreements.

7. Effective June 1, 1988 all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by said contract, working dues in the amount of Twenty Cents ($.20¢) for each straight-time hour worked and Twenty Cents ($.20) for each overtime hour worked, and shall remit monthly to the UNION office designated for the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c) (4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through the 31st of May, 1991 and shall continue thereafter unless either party hereto gives at least sixty (60) days nor more than ninety (90) days from the expiration date written notice by registered or certified mail, to the other party hereto, of the desire to modify and amend this Agreement through Negotiations. In the absence of such notice, the EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Memorandum of Agreement and extending this Agreement for the life of the newly negotiated contract.

10. The employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The employer further acknowledges receipt of a copy of the complete Joint Working Agreement.

Dated at **Bloomingdale** this **2nd** day of **May** 19 **89**

ACCEPTED:

| Laborers' Local Union No. 76 | Brandonisio Construction Corp. |
|---|---|
| | (Employer) |
| By _Frank Riley_ Bus. Mgr. Sec'y-Treas. | By _____ President |
| | (Name & Title) |
| CONSTRUCTION AND GENERAL LABORERS' | |
| DISTRICT COUNCIL OF CHICAGO AND VICINITY | 123 E. Lake Street #101  Bloomingdale, IL. 60108 |
| | (Address) |
| By _Ernest Kumerow_ | |
| Ernest Kumerow, President  Business Manager | (Telephone) |
| By _Joseph A. Lombardo, Jr._ | |
| Joseph A. Lombardo, Jr., Secretary-Treasurer | TRUST FUND |

EXHIBIT
A
tabbies

FROM :                           FAX NO. :                    Jan. 22 2007 03:18PM P2

Jan-22-2007  01:43pm  From-FIELD DEPT              17089477295           T-869  P.002/006  F-187



**PENSION
AND
WELFARE
FUND**

# LABORERS' PENSION FUND
## (CHICAGO and VICINITY)

80016

**11465 CERMAK ROAD
WESTCHESTER, ILLINOIS 60154-5768**

**TOLL FREE: (866) 906-0200
TELEPHONE: (708) 562-0200
PENSION FAX NO.: (708) 562-0790
e-mail: Pension@chllpwf.com**

**BOARD OF TRUSTEES**

ADMINISTRATOR
JAMES S. JORGENSEN

SECRETARY
ALAN ESCHE

APPOINTED BY LABOR
JOSEPH COCONATO
JAMES P. CONNOLLY
J. MICHAEL LAZZARETTO
FRANK RILEY
LARRY WRIGHT
JEFF M. ZIEMANN

FOR EMPLOYERS
CHARLES COHEN
ALAN ESCHE
RICHARD E. GRABOWSKI
ROBERT G. KRUG
DAVID H. LORIG
GARY LUNDSBERG

## LABORERS' PENSION FUND
## PARTICIPATION AGREEMENT
## FOR NON-BARGAINED EMPLOYEES

THIS PARTICIPATION AGREEMENT is entered into by and between *Winfried Blandensius Const. Corp. Otto Blandensius* (Insert the Employer's complete name) (hereinafter the "Employer") who acknowledges that it is a duly licensed corporation under the laws of the State of *Illinois*, and the Laborers' Pension Fund (referred to herein as the "Fund"), who intend to enter into a written agreement required by Section 302 (c) of the LABOR-MANAGEMENT RELATIONS ACT OF 1947, as amended, to permit the Fund to receive contributions on behalf of eligible employees of said Employer. This Participation Agreement shall be effective as of *1/1/07* as approved by the Board of Trustees of the Fund.

1.  The Employer hereby agrees to contribute to the Fund for each eligible employee, as hereinafter defined, contributions in an amount equal to the amounts required of Employers pursuant to the Collective Bargaining Agreements currently in effect between the Builders' Association of Chicago, Underground Contractors Association, Mason Contractors' Association of Cook County, Illinois Road Builders' Association, Concrete Contractors' Association of Greater Chicago, Employing Plasterers' Association of Greater Chicago, and Lake County Contractors Association (hereinafter called the "Associations") and the Construction and General Laborers' District Council of Chicago and Vicinity (hereinafter called the "Union") as such amounts may be amended from time to time or as required by resolution of the Board of Trustees in the case of non-bargained employees.

Eligible employees are defined as:

a)  Bargaining Unit Employees. All bargaining-unit employees as defined in the Collective Bargaining Agreements, Plan, or Trust Agreement.

EMPLOYER PARTICIPANTS --
Builders' Association, Employing Plasterers' Association, Underground Contractors' Association, Mason Contractors' Association, Concrete Contractors' Association, Wrecking Contractors, Concrete Products Employers, Lake County Illinois Employers, Illinois Road Builders Association, Bridge and Highway Structural Builders; i.e. all those who employ Laborers Engaged in the Building

FROM :                          FAX NO. :                          Jan. 22 2007 03:18PM P3

Jan-22-2007 01:43pm    From-FIELD DEPT          17069477295          T-869  P.003/006  F-187

b) <u>Employees with a History of Performing Bargaining Unit Work and are Currently Performing Bargaining Unit Work.</u> Participating employees of the Employer, including corporate officers provided that the Employer, has entered into this Participation Agreement for non-bargained employees, and the non-bargained employees have previously performed covered work within the industry and contributions were previously made on their behalf to the Fund.

The undersigned Employer agrees that a stockholder/shareholder/owner who wishes to participate as an employee of the Employer, and is actively performing bargaining unit work and has a history of performing bargaining unit work for which contributions were previously made to the Fund, may participate in the Fund's plan of benefits, and the Employer will not be required to make contributions on behalf of any other non-bargained employees so long as contributions are limited to individuals regularly performing some bargaining unit work and have a history of performing bargaining unit work for which contributions were made to the Fund.

The Board of Trustees reserves the right to terminate this Agreement with thirty (30) days notice at any time. It is further understood that less than ten (10%) percent of the total participants of the Fund may be stockholders, officers or owners in a non-bargained employee category and that the Board of Trustees will terminate in its discretion some or all non-bargained employees in order to reduce the number of such participants to less than ten (10%) percent of the total number of participants in the Fund. The Trustees shall give no less than thirty (30) days notice of any such termination, which shall become effective upon expiration of any earned continuation coverage.

2. The aforementioned contributions shall be made on each eligible employee, whether a bargaining-unit or non-bargained employee in accordance with the rules promulgated and adopted by the Board of Trustees and as may be amended from time to time, including rules covering late payments and providing for retention and production of records and for audits.

a) Contributions shall be made on behalf of bargaining-unit employees based upon the terms of the Collective Bargaining Agreement and the rules adopted by the Trustees.

b) Employer acknowledges that it has an affirmative responsibility to notify the Fund as to whether or not the non-bargained employee(s) covered by this Participation Agreement is an active participant in bargaining unit work and to notify the Fund at any time said employee is no longer an active participant in bargaining unit work.

c) Contributions for non-bargained employees:

(i) Eligible non-bargained employees shall be contributed for at the hourly rate of contributions as called for in the Collective Bargaining Agreement and amendments thereto or for an amount and for said hours as may be required within its discretion by the Board of Trustees determined from time to time for non-bargained employees by resolutions passed by the Board of Trustees for the proper operation of the Fund.

2

Pen NBPA

(ii) Contributions for non-bargained employees must be for a minimum of forty (40) hours per week and two thousand eighty (2080) hours per year so long as eligible employment continues. Records of hours worked must be maintained in accordance with the Fund's rules or the Employer will be subject to the presumptions concerning hours worked and liabilities.

(iii) An Employer may contribute for an eligible employee as a non-bargained employee in accordance with this Participation Agreement but at no time may contributions be for a lesser rate or for less hours that the required rate and hours as required by the Board of Trustees for non-bargained employees. Work performed for the Employer by a non-bargained employee must be meaningful and not simply for the purposes of obtaining coverage under this Plan.

(iv) Any non-bargained employee who becomes eligible must remain an eligible employee and contributions must continue for the duration of this Participation Agreement unless he/she becomes ineligible.

(v) Whether an employee is eligible shall be the sole determination of the Board of Trustees, and the Employer shall be required to submit report forms as required by the Board of Trustees, upon demand of the Board of Trustees, in order to determine employee eligibility.

3. The Employer's obligation to contribute will continue beyond the term of the Collective Bargaining Agreement only upon the written consent of the Board of Trustees.

4. The Employer adopts and agrees to be bound by all the terms and provisions of the Agreement and Declaration of Trust and Plan creating the Fund (hereinafter called the "Trust Agreement and/or Plan of Benefits") as fully as if the Employer were an original party thereto, receipt of a copy of which the Employer hereby acknowledges. The Employer hereby designates as its representatives on the Board of Trustees of the Fund the Employer Trustees named in said Trust Agreement, together with their successors, selected in the manner provided therein. The Employer agrees to be bound by all actions taken by said Trustees pursuant to the powers granted them by the Trust Agreement.

5. Execution of this Participation Agreement by representatives of the Employer and the Board of Trustees hereby indicates acceptance of the employees listed herein by the Trustees for participation in the Fund and also indicates agreement by the Employer and the Board of Trustees to the terms and conditions recited above regarding the participation of the employees and the Employer in the Fund.

6. This Participation Agreement shall remain in full force and effect for the term of the current Collective Bargaining Agreement between the Association and the Union and shall be automatically renewed from time to time for terms coterminous with those of the aforementioned Collective Bargaining Agreement as the same may be renegotiated from time to time however, it is understood between the Fund and the Employer that the minimum

Pen NBPA

FROM #:                          FAX NO. :                    Jan. 22 2007 03:19PM  P5

Jan-22-2007  01:44pm   From-FIELD DEPT                17089477295          T-850  P.005/006  F-187

period of this Participation Agreement shall be three (3) years from the date of its execution which may be a greater period than the current Collective Bargaining Agreement.

7. Any Employer signing this Participation Agreement, who chooses to contribute for non-bargained employees only to the this Fund and not to the Health and Welfare Fund, recognizes and agrees that it must contribute for bargaining unit employees to both the Fund and the Laborers' Health and Welfare Fund.

8. If contributions owed by an Employer on bargaining unit employees are not timely made to the Fund, the Employer's non-bargained employees shall thereupon not be eligible for any benefits under the terms of the Participation Agreement, until the delinquency is fully cured (including payment of any damages, interest or collection costs) and any contributions made on behalf of non-bargained employees shall first be applied to meet any obligation to contribute on bargaining unit employees, including any costs of collections, interest and liquidated damages incurred by the Fund.

9. Any non-bargained employee who fails to perform meaningful bargaining unit work shall become ineligible to have further contributions made on the employee's behalf to the Fund and to obtain pension credit under the terms of the Plan. Any such non-bargained employee for whom contributions are made by an Employer shall not receive benefits and all contributions made on his behalf shall be forfeited. The Employer shall continue to be obligated to make contributions to the Fund for any remaining eligible employees unless terminated by the Board of Trustees provided, however, that any violation of this Participation Agreement will not affect the obligation of the Employer to pay contributions for bargaining unit employees, unless terminated by the Board of Trustees.

10. An Employer desiring to terminate this Participation Agreement must give sixty (60) days' notice prior to the termination date of the existing Collective Bargaining Agreement between the Union and the Associations (or, if sooner, sixty (60) days before the third anniversary of this Participation Agreement) of the Employer's desire to terminate this Participation Agreement. If the Employer fails to give timely notice to the Board of Trustees, the Employer shall be bound to the provisions of the Participation Agreement for the period of the next Collective Bargaining Agreement or the third anniversary of said Collective Bargaining Agreement if sooner, and thereafter during the terms of successor Collective Bargaining Agreements until proper notice is given.

Pen NBPA

IN WITNESS WHEREOF, the Employer and the Board of Trustees have caused this Participation Agreement to be executed on their behalf by duly authorized officers on the dates appearing opposite their signatures.

We declare the following employees to be non-bargained employees actively performing bargaining unit work and have a history of performing bargaining unit work for which contributions to the Fund were paid:

_Vito Brandonisio_
_____
Name

_____
Social Security Number

_____
Name

_____
Social Security Number

(If additional lines are needed, please attach on a separate piece of paper.)

## DECLINATION STATEMENT

Execution of this Participation Agreement is a condition precedent for participation in non-bargained status but failure to execute will not effect the Employers' obligation to otherwise contribute for bargaining unit employees.

Employer: (Name of Company)

Board of Trustees of the Laborers' Pension Fund

Name: _Brandonisio Construction Corp._

By: _____

Address: _1501 E Wilson_
_Batavia IL 60510_

By. _____

By _Vito Brandonisio President_
         (Title)

Date: _1/26/07_

Date: _1/17/07_

EXHIBIT
**B**

5



PENSION AND WELFARE FUND

# HEALTH and WELFARE DEPARTMENT of the CONSTRUCTION and GENERAL LABORERS' DISTRICT COUNCIL of CHICAGO and VICINITY

**11465 CERMAK ROAD
WESTCHESTER, ILLINOIS 60154-5768**

**TOLL FREE: (866) 906-0200
TELEPHONE: (708) 562-0200
WELFARE FAX NO.: (708) 562-0716
e-mail: Claims@chilpwf.com
e-mail: Eligibility@chilpwf.com**

**BOARD OF TRUSTEES**

ADMINISTRATOR
JAMES S. JORGENSEN

SECRETARY
ALAN ESCHE

APPOINTED BY LABOR
JAMES P. CONNOLLY
RANDY DALTON
MARTIN T. FLANAGAN
LIBERATO NAIMOLI
SCOTT PAVLIS
FRANK RILEY

FOR EMPLOYERS
ALAN ESCHE
CHARLES J. GALLAGHER
RICHARD E. GRABOWSKI
DAVID LORIG
DENNIS P. MARTIN
TIM J. SCULLY

## LABORERS' HEALTH AND WELFARE FUND PARTICIPATION AGREEMENT FOR NON-BARGAINED EMPLOYEES

THIS PARTICIPATION AGREEMENT is entered into by and between _Working for Brandonisio Construction Corp Vito Brandonisio_
(Insert the Employer's complete name) (hereinafter the "Employer")
who acknowledges that it is a duly licensed corporation under the laws of the State of _Illinois_, and the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (referred to herein as the "Laborers' Health and Welfare Fund or "Fund"), who intend to enter into a written agreement required by Section 302 (c) of the LABOR-MANAGEMENT RELATIONS ACT OF 1947, as amended, to permit the Fund to receive contributions on behalf of eligible employees of said Employer. This Participation Agreement shall be effective as of _1|17|07_, as approved by the Board of Trustees of the Fund.

1. The Employer hereby agrees to contribute to the Fund for each eligible employee, as hereinafter defined, contributions in an amount equal to the amounts required of Employers pursuant to the Collective Bargaining Agreements currently in effect between the Builders' Association of Chicago, Underground Contractors Association, Mason Contractors' Association of Cook County, Illinois Road Builders' Association, Concrete Contractors' Association of Greater Chicago, Employing Plasterers' Association of Greater Chicago, and Lake County Contractors Association (hereinafter called the "Associations") and the Construction and General Laborers' District Council of Chicago and Vicinity (hereinafter called the "Union") as such amounts may be amended from time to time or as required by resolution of the Board of Trustees in the case of non-bargained employees.

**EXHIBIT C**

EMPLOYER PARTICIPANTS –
Builders' Association, Employing Plasterers' Association, Underground Contractors Association, Mason Contractors' Association, Concrete Contractors' Association, Wrecking Contractors, Concrete Products Employers, Lake County Illinois Employers, Illinois Road Builders Association, Bridge and Highway Structural Builders; i.e. all those who employ Laborers Engaged in the Building and Construction Industry.

522

Eligible employees are defined as:

a) <u>Bargaining Unit Employees</u>. All bargaining-unit employees as defined in the Collective Bargaining Agreements, Plan, or Trust Agreement.

b) <u>Employees Performing Bargaining Unit Work</u>. Participating employees of the Employer, including corporate officers provided that the Employer, has entered into this Participation Agreement for non-bargained employees.

The undersigned Employer agrees that a stockholder/shareholder/owner who wishes to participate as an employee of the Employer, and is actively performing bargaining unit work, may participate in the Fund's plan of benefits, and the Employer will not be required to make contributions on behalf of any other non-bargained employees so long as contributions are limited to individuals regularly performing some bargaining unit work.

The Board of Trustees reserves the right to terminate this Agreement with thirty (30) days notice at any time. It is further understood that less than ten (10%) percent of the total participants of the Fund may be stockholders, officers or owners in a non-bargained employee category and that the Board of Trustees will terminate in its discretion some or all non-bargained employees in order to reduce the number of such participants to less than ten (10%) percent of the total number of participants in the Fund. The Trustees shall give no less than thirty (30) days notice of any such termination, which shall become effective upon expiration of any earned continuation coverage.

2. The aforementioned contributions shall be made on each eligible employee, whether a bargaining-unit or non-bargained employee in accordance with the rules promulgated and adopted by the Board of Trustees and as may be amended from time to time, including rules covering late payments and providing for retention and production of records and for audits.

a) Contributions shall be made on behalf of bargaining-unit employees based upon the terms of the Collective Bargaining Agreement and the rules adopted by the Trustees.

b) Employer acknowledges that it has an affirmative responsibility to notify the Fund as to whether or not the non-bargained employee(s) covered by this Participation Agreement is an active participant in bargaining unit work and to notify the Fund at any time said employee is no longer an active participant in bargaining unit work.

c) Contributions for non-bargained employees:

(i) Eligible non-bargained employees shall be contributed for at the hourly rate of contributions as called for in the Collective Bargaining Agreement and amendments thereto or for an amount and for said hours as may be required within its discretion by the Board of Trustees determined from time to time for non-bargained employees by resolutions passed by the Board of Trustees for the proper operation of the Fund.

Wel NBPA

(ii) Contributions for non-bargained employees must be for a minimum of forty (40) hours per week and two thousand eighty (2080) hours per year so long as eligible employment continues. Records of hours worked must be maintained in accordance with the Fund's rules or the Employer will be subject to the presumptions concerning hours worked and liabilities.

(iii) An Employer may contribute for an eligible employee as a non-bargained employee in accordance with this Participation Agreement but at no time may contributions be for a lesser rate or for less hours that the required rate and hours as required by the Board of Trustees for non-bargained employees. Work performed for the Employer by a non-bargained employee must be meaningful and not simply for the purposes of obtaining coverage under this Plan.

(iv) Any non-bargained employee who becomes eligible must remain an eligible employee and contributions must continue for the duration of this Participation Agreement unless he/she becomes ineligible.

(v) Whether an employee is eligible shall be the sole determination of the Board of Trustees, and the Employer shall be required to submit report forms as required by the Board of Trustees, upon demand of the Board of Trustees, in order to determine employee eligibility.

3. The Employer's obligation to contribute will continue beyond the term of the Collective Bargaining Agreement only upon the written consent of the Board of Trustees.

4. The Employer adopts and agrees to be bound by all the terms and provisions of the Agreement and Declaration of Trust and Plan creating the Fund (hereinafter called the "Trust Agreement and/or Plan of Benefits") as fully as if the Employer were an original party thereto, receipt of a copy of which the Employer hereby acknowledges. The Employer hereby designates as its representatives on the Board of Trustees of the Fund the Employer Trustees named in said Trust Agreement, together with their successors, selected in the manner provided therein. The Employer agrees to be bound by all actions taken by said Trustees pursuant to the powers granted them by the Trust Agreement.

5. Execution of this Participation Agreement by representatives of the Employer and the Board of Trustees hereby indicates acceptance of the employees listed herein by the Trustees for participation in the Fund and also indicates agreement by the Employer and the Board of Trustees to the terms and conditions recited above regarding the participation of the employees and the Employer in the Fund.

6. This Participation Agreement shall remain in full force and effect for the term of the current Collective Bargaining Agreement between the Association and the Union and shall be automatically renewed from time to time for terms coterminous with those of the aforementioned Collective Bargaining Agreement as the same may be renegotiated from time to time however, it is understood between the Fund and the Employer that the minimum

Wel NBPA

period of this Participation Agreement shall be three (3) years from the date of its execution which may be a greater period than the current Collective Bargaining Agreement.

7.  Any Employer signing this Participation Agreement, who chooses to contribute for non-bargained employees only to the Fund and not to the Laborers' Pension Fund, recognizes and agrees that it must contribute for bargaining unit employees to both the Fund and the Laborers' Pension Fund.

8.  If contributions owed by an Employer on bargaining unit employees are not timely made to the Fund, the Employer's non-bargained employees shall thereupon not be eligible for any benefits under the terms of the Participation Agreement, until the delinquency is fully cured (including payment of any damages, interest or collection costs) and any contributions made on behalf of non-bargained employees shall first be applied to meet any obligation to contribute on bargaining unit employees, including any costs of collections, interest and liquidated damages incurred by the Fund.

9.  Any non-bargained employee who fails to perform meaningful bargaining unit work shall become ineligible to have further contributions made on the employee's behalf to the Fund and to obtain payment of any otherwise eligible claims incurred after such loss of eligibility. Any such non-bargained employee for whom contributions are made by an Employer shall not receive benefits and all contributions made on his behalf shall be forfeited. The Employer shall continue to be obligated to make contributions to the Fund for any remaining eligible employees unless terminated by the Board of Trustees provided, however, that any violation of this Participation Agreement will not affect the obligation of the Employer to pay contributions for bargaining unit employees, unless terminated by the Board of Trustees.

10. An Employer desiring to terminate this Participation Agreement must give sixty (60) days' notice prior to the termination date of the existing Collective Bargaining Agreement between the Union and the Associations (or, if sooner, sixty (60) days before the third anniversary of this Participation Agreement) of the Employer's desire to terminate this Participation Agreement. If the Employer fails to give timely notice to the Board of Trustees, the Employer shall be bound to the provisions of the Participation Agreement for the period of the next Collective Bargaining Agreement or the third anniversary of said Collective Bargaining Agreement if sooner, and thereafter during the terms of successor Collective Bargaining Agreements until proper notice is given.

Wel NBPA

IN WITNESS WHEREOF, the Employer and the Board of Trustees have caused this Participation Agreement to be executed on their behalf by duly authorized officers on the dates appearing opposite their signatures.

We declare the following employees to be non-bargained employees actively performing bargaining unit work and have a history of performing bargaining unit work for which contributions to the Fund were paid:

Vito Brandonisio
Name                                      Social Security Number

Name                                      Social Security Number

(If additional lines are needed, please attach on a separate piece of paper.)

## DECLINATION STATEMENT

Execution of this Participation Agreement is a condition precedent for participation in non-bargained status but failure to execute will not effect the Employers' obligation to otherwise contribute for bargaining unit employees.

Employer: (Name of Company)             Board of Trustees of the Laborers' Pension Fund

Name: Brandonisio Construction Corp    By: _____
Address: 1501 E Wilson
Batavia IL 60510            By: _____

By: Vito Brandonisio /President
(Title)                        Date: 1/26/07
Date: 1/17/07

5

Fax sent by : 17089477295        LABORS FIELD DEPT            07-27-10 10:43a    Pg: 2/13

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund") and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Health and Welfare Fund" or collectively the "Funds"), the parties of the first part, and Brandonisio Construction Corporation (the "Company"), the party of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues:

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the audit period of March 1, 2008 thru December 13, 2009.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the audit period of March 1, 2008 thru December 13, 2009.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $32,887.39 to the Health and Welfare Fund (comprised of $21,956.49 in delinquent contributions, $4,391.30 in liquidated damages, $467.50 in audit costs and $6,072.10 in interest) (based on an interest rate of 12%). The Company will also pay $25,439.23 to the Pension Fund (comprised of $16,992.44 in delinquent contributions, $3,398.49 in liquidated damages, $467.50 in audit costs and $4,580.80 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 4 and 5.

2. The Company will also pay $1,033.51 to the Training Fund (comprised of $771.23 in delinquent contributions, $154.25 in liquidated damages and $108.23 in interest), $215.12 to the CCA Fund (comprised of $172.18 in delinquent contributions, $17.22 in liquidated damages and $25.72 in interest), $203.96 to the LECET Fund (comprised of $164.14 in delinquent contributions, $16.41 in liquidated damages and $23.41 in interest), $368.74 to the LDCMC Fund (comprised of $295.14 in delinquent contributions and $29.51 in liquidated damages) and $2,737.93 in union dues (comprised of $2,399.95 in delinquent contributions and $240.00 in liquidated damages and $97.98 in Dues penalties). These delinquent amounts shall be paid in their entirety at the time payment under this Note commences, in accordance with the schedule described in paragraph 4.

3. The Company will also pay the Funds the sum of $935.00 in audit costs. This amount split equally between Welfare and Pension as described in paragraph 1 above.

4. On August 1, 2010, the Company will pay twenty percent (20%) of the total outstanding indebtedness, excluding note interest and the delinquent amounts described above in paragraph 2, or $5,922.19 to the Health and Welfare Fund and $4,561.93 to the Pension Fund.

5. For twenty-four (24) consecutive months commencing on September 1, 2010 and ending on August 1, 2012, the Company will pay $1,123.55 per month to the Health and Welfare Fund and $869.90 per month to the Pension Fund.

6. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

7. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.



EXHIBIT
D

Fax sent by : 17089477295      LABORS FIELD DEPT      07-27-10 10:43a    Pg: 3/13

8. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Fund's respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this Note.

9. This Installment Note is conditioned on the Company's staying current on its obligations to the Funds under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution reports and to make timely contribution payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

10. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

11. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the _____ day of the _____, 2010.

Brandonisio Construction Corporation

By: _____ X

Title: _____ X

Laborers' Pension Fund

By: _____

Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

By: _____

# GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of _____, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (collectively, the "Funds").

WHEREAS, **Brandonisio Construction Corporation** (the "Company") has agreed to pay a total of $62,885.88 to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and refinanced Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the guarantor executes this Guaranty: and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note:

NOW WHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. <u>Guaranty of Payment and Indemnification.</u> The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twenty-four (24) month payment period including interest and liquidated damages for late or unpaid payments due on the note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgement bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

2. <u>Continuing Guaranty.</u> This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the party of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. <u>Waivers.</u> Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

4. <u>Subrogation.</u> Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the guarantor expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note.

1

 EXHIBIT E

The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other period (including and surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. **Independent Obligations.** The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds form suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. **Acceleration.** In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. **Effect of Bankruptcy.** This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. **Termination.** This Guaranty shall remain in full force and effect as to the Guarantor until all of the Companys' Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations form time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. **The Company's Financial Condition.** The guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. **Expenses.** The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. **Delay, Cumulative Remedies.** No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. **Binding Effect.** This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time, and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. **Default.** The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any

2

such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. <u>Warranties.</u> Guarantor makes to the Funds the following representations and warranties:

(a) <u>Authorization.</u> Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) <u>No Conflict.</u> The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality which involve any of the transactions herein contemplated, or the possibility of any judgement or liability which may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in period, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

_____
_____
_____

In Case of the Funds:

Collection Counsel
Patrick T. Wallace
Laborers Pension & Welfare Fund
Sub Office
111 W Jackson Blvd
Suite 1415
Chicago IL 60604-3868

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor's attorney, _____, But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

16. <u>Additional Waivers.</u> Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

3

17. <u>Severability.</u> If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. <u>Applicable Law; Venue.</u> This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue or any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. <u>Time is of the Essence.</u> Time is of the essence of this Guaranty as to the performance of the undersigned.

20. <u>Death of a Guarantor.</u> In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

X _____          _____          _____

_____
Social Security Number         _____          _____

Date: 8-2-10        X          _____          _____

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR;

_____

Dated: _____

4